No. 9801.

DAVIES *v*. CRAIG, ET AL.

Decided July 5, 1921.   Rehearing Denied October 3, 1921.

Action involving the location of. a section corner.   Judgment for plaintiffs.

*Reversed.*

1. BOUNDARIES—*Courses and Distances*—*Monuments.*  Courses and distances must yield to monuments set in the original survey, and when such monuments are found, they establish the boundaries.

2. APPEAL AND ERROR—*Findings.*  Where findings of the trial court are without support in the evidence, they may be disregarded on review and a judgment directed according to the undisputed facts.

*Error to the District Court of Grand County, Hon. Harry S. Class, Judge.*

Messrs. HOWARD & MCCRILLIS, for plaintiff in error.

Mr. H. A. HICKS, Mr. E. W. HURLBUT, Mr. A. ·T. MONSON, for defendants in error.

*En banc.*

MR. JUSTICE TELLER delivered the opinion of the court.

THIS case, which is here for the second time, involves the location of the corner common to sections 5, 6, 7 and. 8 township 3 north, range 75 West, Grand County.   The parties will be designated as in the trial court.

The plaintiffs below, who are defendants in error here, brought an action against the plaintiff in error, and others, to remove a cloud on the plaintiff's title.   Later it appears that, by consent of the parties, the case was treated as arising under the statute concerning lost or disputed boundaries.   The trial court appointed two surveyors as commissioners to locate the south line of section. 6 and

establish the southeast corner thereof. The commissioners took testimony and reported that the south line terminated on the edge of the lake at a point where there was a stone marked "C C" on the north side, with five grooves on the east and five on the south. They reported that this stone was practically in line between the southwest corner of section 6, the monument of which was not disputed, and the recognized corner common to sections 3, 4, 9 and 10 to the east; and that said C C stone was 2470 feet easterly, on said line, from the south quarter corner of section 6. They also reported that, starting from the east quarter corner of 7 and running a true line between said quarter corner and the northeast corner of section 6, also undisputed, at a distance of 2548.62 feet from said east quarter corner of 7, their line intersected the south shore of Grand Lake at a point 42 feet east of another stone set on the shore of the lake marked "C C" on the west face, with five grooves on the south face and five on the east face. This they determined to be the intersection of the line between sections 7 and 8 with the meander line of the lake. This placed the corner in question in the lake at the intersection of these two lines projected from the respective C C stones.

The court sustained objections to the report, appointed another commissioner who reported that, according to the field notes as recorded in the surveyor general's office, said corner was 6.54 chains west of meander corner 8 set on the south shore of the lake. He accordingly set a stone 6.54 chains west of said meander corner as the southeast corner of section 6. The court approved the report and entered judgment accordingly. That judgment was reversed in this court in an opinion found in 60 Colo. 42, 151 Pac. 934.

Another commissioner was thereupon appointed and reported the corner substantially as placed by the judgment which was reversed. Thereafter, further evidence was taken before the court, largely by deposition, and the court made new findings establishing the corner within a few

feet of where it was located by the last named commissioner. The cause is now here on error to that judgment.

It is evident that this litigation was begun, has been carried on by the plaintiffs, and decided by the court, upon a wrong conception of the relative value, as evidence, of the records of the Surveyor General's office and the evidence of the survey which may be found on the ground.

"It is elementary that courses, distances and quantities yield to monuments set in the original survey, and that, when such monuments are found, they establish the boundaries of the survey; this for the reason that they are better evidence of what the surveyor did than are plats or field notes." *Morse v. Breen,* 66 Colo. 398, 182 Pac. 887.

The report of the last commissioner, which was substantially followed by the court, accepts and is clearly based upon the records of the surveyor general's office. Despite the fact that it is admitted that those records, and the plat made in connection with them, place Grand Lake about 460 feet nearer to the north boundary of the township, which is evidenced by undisputed monuments, than it actually is when located by those monuments, the commissioner locates the corner on the land, and explains that he did so because that was the location least inconsistent with the field notes. It is not located according to the field notes generally, but apparently with relation to the supposed meander corner 8.

On the second trial it was found that what was supposed to be meander corner 8 was meander corner 53, meander corner 8 being upon the north shore of the lake. There is therefore nothing in the record which justified the action of Commissioner Brown in proportioning the corner in between the south quarter corner of 6 and a supposed meander corner 8. It being admitted that the lake is 460 feet farther north, according to the plat, than it actually is, it would appear that that mistake having been made, the notes were written up to conform to the supposed location of the lake.

Huntington, a witness for plaintiff, while assistant

county surveyor, established a corner on the land in accordance with the plaintiff's contention. He testified that from the south quarter corner of 6 east to the C C stone the line is nearly on the course as given in the notes.

The supervisor of Arapahoe Forest testified that in 1917, at the southwest corner of section 6, he found bearing trees with blazes, and that upon cutting into the trees he found thirty-six rings of annual growth since the blazes were made, from which he determined that the cuttings had been made thirty-six years prior to his investigation; that is, in 1881, the date of the original survey. He found trees likewise blazed at the south quarter corner, and some near the C C stone on the west side of the lake, all showing thirty-six years of growth since the blazing. He testified further that there was a plainly marked line from the south quarter corner eastward to said C C stone; that he found near that stone a dead tree blazed, showing thirty-two rings, and in a live tree blazes showing thirty-six rings. He further testified that he had had experience in relocating survey lines in the forest.

Treas, who made the meander survey immediately following the original survey by Ouellette, and under the same contract, testified that the instructions from the surveyor general's office were to set closing corner stones where subdivisional lines intersected the high water line of the lake.

Alden testified that he was shown the C C stone on the west side of the lake, and saw the blazed line to the westward of it, forming the south line of section 6, within a few days of the survey.

Westcott, who was a squatter on section 7, and who entered land in that section and in the southeast of 6, testified by deposition that he saw the C C stone set at the east end of the south line of 6, and that Ouellette, the surveyor, told him that he had placed a stone also on the south shore of the lake, marking the end of the line between section 7 and section 8; and that the corner was in the lake where the lines, if projected, would intersect.

Ashley, who financed Ouellette, on this survey, testified that he saw the south line of 6 run from a short distance west of the south quarter corner to the lake; that trees were blazed along the line, and the brush cut out to the lake, where the C C stone was set. He further testified that Westcott was there at the time, thus corroborating the latter's testimony. He says further that he was directed by the surveyor general to have closing corner stones set where the survey lines intersected the line of the lake. He called attention to the fact that the field notes show that the line between sections 5 and 6 was run from the north, whereas if the corner had been on the land as located by the judgment of the court, this line should have been run north from that corner, instead of south to it.

Byers testified that in the fall of 1881, he assisted his father, a deputy United States surveyor, in laying out the town site of Grand Lake; that when the line was run to the lake a C C stone was found at the southwest corner of the lake; that the section corner was supposed to be in the lake; that the town site was tied to this C C corner.

It is worthy of note that all the other monuments set in the survey of said section 6, except the east quarter corner, are in place and undisputed. This quarter corner is admittedly in the lake. This is at least suggestive that the southeast corner of 6 was never set on the land.

The trial court did not adopt the findings of Commissioner Brown *in toto,* but made new findings from which he located the corner in question within a few feet of its location by the commissioner. The court said:

"While in the former trial of this cause it seems to have been taken for granted that meander corner No. 8 was a corner set in the meander survey of the lake, it now appears, and the court so finds, that M C 8 was a corner set in the subdivisional survey and not in the subsequent meander survey of the lake. It therefore becomes a monument of importance being an incidental call to the corner in the subdivisional survey."

We find nothing in the record to support this finding of

the court, except the field notes, which are contradicted by the accepted monuments on the ground. There is no evidence that the corner marked M. C. 53 was set in the subdivisional survey and treated as M. C. 8.

The court further finds: "that the so called C C stones around Grand Lake were not part of the original government survey, nor was the well marked and blazed line near the south line of section 6, which defendants contend was the south line of section 6."

The only ground for this finding is that the C C stones are not mentioned in the surveyor's notes as recorded. On the other hand, there is the testimony of two witnesses who saw the C C stones set as closing corners upon the lake; and two others who saw them within a few days, and when the line eastward from the south quarter corner of 6 was freshly cut and blazed. The testimony of these witnesses is uncontradicted. The testimony of the Forest Supervisor as to the age of the blazings strongly corroborates the witnesses who testified that the line was so blazed.

The further finding of the court that the lines as originally run can be fully retraced, and that they show that the missing corner should be where located by the commissioner, has no evidence whatever to sustain it. The line from the south quarter corner of 6 to the corner established by the commissioner is far away from the course reported in the notes, and runs through timber in which there is no evidence of a line ever having been run at the time of the original survey.

Upon the undisputed evidence the C C stones mark the intersection of subdivisional lines with the highwater line of the lake. The evidence clearly establishes that a line was blazed, and the brush cut out nearly due east from the south quarter corner of 6 to the C C stone on the west shore of the lake. The findings of the trial court being without support in the evidence, this court is at liberty to disregard them, and direct a judgment in accordance with the undisputed evidence in the case.

The judgment is therefore reversed, and the trial court

is directed to enter a decree fixing the southeast corner of section 6 at a point in Grand Lake where a line from the south quarter corner of 6, passing through the C C stone on the west side of the lake, projected on that course, intersects a line between the east quarter corner of section 7, and the accepted monument at the northeast corner of said section 6. The other lines in difference will then be easily located from the lines thus determined.

MR. CHIEF JUSTICE SCOTT and MR. JUSTICE BAILEY not participating.