No. 19,453.

JAMES A. DAVIS, ET AL. *v.* CARL DILLEY, ET AL.
(363 P. [2d] 658)

Decided August 7, 1961.

Messrs. STINEMEYER & STINEMEYER, for plaintiffs in error.

Mr. JOHN STUMP WITCHER, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MOORE.

WE will refer to plaintiffs in error as plaintiffs, as they appeared in the trial court. The Federal Land Bank of Wichita disclaimed any interest in the case and Carl

Dilley is the only defendant in error appearing in the action. We will refer to him by name or as defendant.

It was alleged by plaintiffs in their complaint that they were the owners of the Northwest Quarter of Section 12, Township 21 South, Range 71 West of the 6th P.M. in Custer county, Colorado, and that defendant Dilley was the owner of the Northeast Quarter of said section; that Dilley had constructed a fence on the lands of plaintiffs which was not on the true boundary between the lands owned by plaintiffs and defendant thereby ousting plaintiffs from a portion of their land and depriving them of access to Oak Creek and its use for watering stock, and from the use and possession of approximately twenty-two acres of land. Plaintiffs prayed for judgment ejecting defendant Dilley from their land; adjudging the location of the northeast corner of the northwest quarter of said section; and for a decree quieting title to the disputed acreage in plaintiffs.

Defendant Dilley by answer admitted the construction of the fence as alleged but denied that such act was wrongful or unlawful; admitted that plaintiffs had been deprived of access to Oak Creek, but denied that his acts in the premises were wrongful or unlawful; admitted that he asserted ownership to the lands in question; and prayed that the true boundary line between the lands of plaintiffs and defendant be determined and adjudged by the court to be the line of the fence erected by him.

In his opening statement the attorney for plaintiffs outlined the issues before the trial court as follows:

" * * * the only issue is on one point, and that is the true location of a quarter-section corner, that is, the quarter-section corner on the North line of Section 12, Township 20 South, Range 71 West of the Sixth Principal Meridian. The issue then is a mixed issue of fact and law."

He further asserted that the quarter corner in question was one of an obliterated corner and not one of a lost corner.

The attorney for Dilley contended at the trial, and contends here, that the north line of said Section 12 is short by approximately one-eighth of a mile, and that the corners in dispute are, in fact, in place and accordingly there is no lost corner and no obliterated corner.

Following trial to the court findings were entered which included the following:

"It appears from the amended complaint and answer filed in this matter that the question to be decided here is the proper location of the lines in question, that is, the North and South Center line of Section 12, Township 21 South, Range 71 West of the 6th p.m., and the North line of the Northwest Quarter of said Section 12.

"The plaintiffs, relying on Oak Creek, a natural monument, the Manual of Surveying Instructions, the original field notes, and original plat of said land, allege that the North-South Center line of Section 12, Township 21 South is located East of Oak Creek.

"The defendant, Dilley, relying upon a survey made by his engineer, Robert F. Harrison, alleges that the said North-South Center line of Section 12, Township 21 South is located West of Oak Creek, and in reliance thereon has built a fence conforming very nearly to said line.

"The plaintiffs ask that the defendant, Carl Dilley, be ejected from the portion of the land lying East of said fence, for damages, and that the line be determined as contended for by them.

"The plaintiffs, through their engineers, Chatfield and Lamb, presented evidence that upon following the Manual of Surveying Instructions of the Lands of the U.S., and by interpreting the original field notes, together with reference to the original plat, they determined the North Quarter Corner of Section 12 to be 2618.9 feet East of the West line of Section 12, and East of Oak Creek, and far distant from the point West of Oak Creek where the defendant's, Dilley, engineer fixes the same. Although the engineers for the plaintiffs

found no monument at this point, several witnesses for the plaintiffs, who were old-time residents of the County, testified that they had seen, in times past, a monument or stake in the place at or near the location where the plaintiffs' engineers finally determined the same to be. They did not, however, fix the location of the South Quarter Corner of said Section 12.

"The engineer for the defendant Dilley, Robert F. Harrison, testified that the total length of the North line of Section 12 was 4527.1 feet. That from the Northwest Corner of Section 12, which is not in dispute, and running a line North 87 degrees 42 minutes East, 1968.9 feet, he found a quarter corner in place, and so marked, and that the same appeared to be the original corner stone set by the government surveyor. That upon measuring North 87 degrees .08 minutes East to the Northeast Corner of said Section 12, which is on the range line, he found that distance to be 2558.2 feet. He then proceeded to the South side of the section and upon a search found the South Quarter Corner of Section 12. That upon measuring South 88 degrees 23 minutes West from the Southeast Corner of said section he found the distance to said quarter stone to be 2406 feet. Measuring on South 89 degrees 20 minutes West to the Southwest Corner of said section he found the distance to be 1948 feet. Upon running a line South from the North Quarter Corner he found the South Quarter Corner approximately 20 feet West of said line. He also found, in running Westerly from the Northeast Corner of said Section 12, and following the field notes, that the North Quarter Corner was within sixty feet of the location set by the field notes, and 11 feet South of the North line of Section 12, set by the field notes.

"Upon completion of the evidence the defendant, Dilley, moved to dismiss the plaintiffs' complaint on the ground that the plaintiffs had not made out a prima facie case.

"*AS CONCLUSIONS OF LAW FROM THE FORE-*

GOING FACTS THE COURT HEREBY FINDS AND DECIDES:

"That the plaintiffs have failed to make out a prima facie case in that this case is and must be based upon the proposition that where there is a conflict between field notes and well-established monuments, the latter will prevail. The defendant, Dilley's engineer, Robert F. Harrison, testified that he, in every respect, found well-established monuments, which corresponded, practically, with the situation on the ground. Photos were presented to the Court showing these monuments. And it is the feeling of the Court that notwithstanding any arguments that might be made, or any ruling which the Court might make with respect to determining lost or obliterated corners, the Court would ultimately be required to rule in favor of the location of the North and South Quarter corners as determined by Harrison's survey, and herein set out, and that the motion of the defendant, Dilley, that the plaintiffs' complaint be dismissed, must be granted, the case dismissed, and judgment is hereby ordered accordingly."

Question to be Determined.

■ *Where the evidence offered by defendant to establish disputed boundary was sufficient to justify finding that well established monuments corresponding with situation on the ground located true boundary line between lands of the parties, was it error for the court to reject testimony of plaintiffs' engineer expressing opinion that boundary should be placed in accordance with his own survey?*

■ The question is answered in the negative. There is ample evidence in the record to justify the conclusions of the trial court. Both sides admit that the north boundary of Section 12 is so short as to indicate either a grievous error by the original government surveyors or a falsification. The testimony of lay witnesses offered by plaintiff was found by the trial court to be unsatisfactory. On the other hand, the conclusion of the sur-

veyor for defendant not only indicates the corner accepted by the trial court as regular and of long standing, but its location is almost conclusively proven by the location of the corresponding south corner. A line connecting these two corners runs almost due north and south and is straight, whereas acceptance of plaintiffs' version compels recognition of a line running in a marked diagonal north and south direction. All the above seems to discount the theory of plaintiffs that the North quarter corner was an obliterated corner. This court has held that:

"It is a general rule that the original corners as established by the government surveyors, if they can be found, or the places where they were originally established, if that can be definitely determined, are conclusive on all persons owning or claiming to hold with reference to such survey and the monuments placed by the original surveyor without regard to whether they were correctly located or not." (Citing numerous authorities.) *Everett v. Lantz*, 126 Colo. 504, 252 P. (2d) 103.

The above rule is amply supported by texts and decisions from other jurisdictions. 11 C.J., p. 552, Sec. 11 — Government Corners; *Davies v. Craig*, 70 Colo. 296, 201 Pac. 56.

The judgment of the trial court is affirmed.

MR. CHIEF JUSTICE HALL and MR. JUSTICE DOYLE concur.