No. 17,884.

ROBERT F. HARRISON, ET AL. *v.* GEORGE G. EVERETT, ET AL.

(308 P. [2d] 216)

Decided March 11, 1957.  Rehearing denied April 1, 1957.

56

Messrs. HENRY & ADAMS, Mr. VICTOR QUINN, Mr. ALLEN M. BROADSTREET, for plaintiffs in error.

Messrs. BOYLE & WITTY, for defendants in error Everett Lowry and Eileen Lowry.

*In Department.*

MR. JUSTICE FRANTZ delivered the opinion of the Court.

THE Harrisons (plaintiffs in error) seek a reversal of that part of the decree entered by the trial court in this cause in which it was held that the Lowrys (defendants in error) had established their counterclaim alleging title in them by adverse possession for more than eighteen years to a portion of the property sought to be quieted by the Harrisons.

Harrisons' Exhibit A and Lowrys' Exhibit 1, both received in evidence, are plats of the property described in Harrisons' complaint and of adjoining property. There are material differences in these two exhibits,

and without determining which is the correct diagram (a matter not necessary to this decision, as will hereinafter appear), we will use Exhibit A, since it will serve to better illustrate the controversy.

It is the position of the Harrisons that the 4.1 acres lying south and west of the river and shown by the triangle is the property claimed by the Lowrys.

The Lowrys contend that they own by reason of adverse possession that property south and west of and adjoining the river as it extends in a southwesterly direction to the fence, represented by a broken line upon which is superimposed a number of small x's.

The Harrisons' ownership of all the property in the northwest quarter of the northeast quarter of Section 26 which lies south and west of the river depends upon three deeds:

1. A Treasurer's Deed dated, acknowledged and recorded on March 15, 1938, conveying the following described premises to Chaffee County: Part Northwest quarter of the Northeast quarter (NW ¼ NE ¼) All south and west of the Arkansas River except ten rods off East end, in Section 26, Township 50 N., Range 8 E. New Mexico Principal Meridian.

2. A Quit-Claim Deed from Chaffee County to Solomon Grodal dated, acknowledged and recorded on the 29th day of January 1945 and conveying the following property: All that part of the Northwest Quarter (NW ¼) of the Northeast Quarter (NE ¼) of Section number twenty six (26) in Township Fifty North, Range Eight (8) East of the New Mexico Principal Meridian, lying South and West of the Arkansas River, — excepting ten (10) rods off of the East end of said real property.

3. A Quit-Claim Deed from Solomon Grodal to the Harrisons dated and acknowledged on February 3, 1953, and recorded on February 5, 1953, conveying the following described property: All that part of NW ¼ NE ¼, section 26, Township 50 North Range 8 East N.M.-P.M., lying South and West of Arkansas River, excepting Ten (10) rods off the East end of said real property, heretofore conveyed to school district No. 5.

The Lowrys rely upon the following circumstances to

show their adverse possession of the property southwest of the river in said section extending to the fence line: that they own property in Section 23, and that the same is one piece with the disputed property because it is unfenced between them; that they grazed cattle on said disputed property; that until two years before the filing of the suit the fence in said portion of Section 26 was sufficient to turn cattle, and that these circumstances were true in connection with their predecessors in possessing and using said property. Such possession extended over a period of approximately fifty years. They further contend that they used the area immediately adjacent to the river for a route to other property owned by them south of the area in question. Some reliance is placed upon an offer made by Mr. Harrison of $250.00 for the disputed property as an admission, although the offer appears to have been made not in recognition of the right of the Lowrys in the premises, but as a means of keeping out of court and settling the dispute.

The testimony of Mr. Harrison was to the effect that he grazed his cattle on the land in dispute; that there was no fence sufficient to restrain his cattle from this area; and that he paid the taxes on the property. He produced a receipt for taxes for the year 1953, payable in 1954, covering "P.T. NW ¼ NE ¼, ALL S & W OF ARK. RIVER B. 273, P. 175, 26-50-8."

In the second defense to the counterclaim of the Lowrys, asserting adverse possession, the Harrisons alleged the sale of all the property south and west of the Arkansas River for delinquent taxes for the year 1930, the issuance of a tax sale certificate, and the delivery on March 15, 1938, of a treasurer's deed. No attack was made by the Lowrys contesting the validity of the tax sale or the tax deed.

In our view of the case, adverse possession is of no importance if the several deeds convey all the property in the northwest quarter of the northeast quarter south and west of the river.

■ Is there a difference in the land conveyed by a description conveying that part of a section all south and west of the *Arkansas River* and a description conveying all of the same section south and west of *said river?* We think not. If the description in a deed identifies, or furnishes the means of identifying, the property conveyed, it performs its function. *Wheeler Perry Co. v. Mortgage Bond Co.,* 41 Ariz. 247, 17 P. (2d) 331. A description is sufficient when from it the property can be identified. *Derham v. Hill,* 57 Colo. 345, 142 Pac. 181. As we see it, the descriptions in the several instruments substantially identify the same property. So minor are the differences in description that we think it aptly may be said of them,

"Strange all this difference should be
'Twixt Tweedledum and Tweedledee."

■ The issuance of a valid treasurer's deed created a virgin title erasing all former interests in the land. "When the treasurer issued his tax deed in conformity with law, he initiated a new title to the lands so conveyed. The former title is wiped out and a fortiori former liens and charges on such lands are removed." *McDermott v. Irrigation District,* 130 Colo. 44, 272 P. (2d) 995. See *Sanderford v. Walker Investment Co.,* 84 Colo. 203, 269 Pac. 14; *Kasner v. Wilson,* 202 Okla. 497, 215 P. (2d) 833. " 'A tax title, from its very nature, has nothing to do with the previous chain of title; does not in any way connect itself with it. It is a breaking up of all previous titles.' " *Tinsley v. Atlantic Mines Company,* 20 Colo. App. 61, 77 Pac. 12. By a tax deed one acquires "a new, independent and paramount title to the property." *Greene v. Esquibel,* 58 N.M. 429, 272 P. (2d) 330.

■ Title by adverse possession vanishes when the treasurer issues his deed in accordance with law for unpaid taxes. "The title by adverse possession thus disclosed against the original owner of the land disappeared when the land was sold for taxes under which the purchaser obtained the land free from the appellee's claim

thereto." *Harris v. Lollar* (Miss. 1944), 17 S. (2d) 325. "Clearly adverse possession prior to the creation of a tax title lends not the least support to the title claimed thereafter." *Gustaveson v. Dwyer,* 78 Wash. 336, 139 Pac. 194.

In order to start anew a prescriptive title, the Lowrys must have proven an adverse possession commencing with the 29th day of January 1945, the date on which the property was conveyed by Chaffee County to Solomon Grodal. From March 15, 1938, to January 29, 1945, the period during which the County owned the property, adverse possession could not be established. Time does not run against the County while it is the owner of the property. "There could be no adverse possession against the government." *Omaha & Grant Co. v. Tabor,* 13 Colo. 41, 21 Pac. 925; *Winstead v. Winstead,* 204 Miss. 787, 38 S. (2d) 118; *Greene v. Esquibel, supra; Grand Rapids Trust Co. v. Doctor,* 222 Mich. 248, 192 N.W. 641. Obviously, the Lowrys are short a number of years on which to build another prescriptive title.

May the defendants whose years of renewed adverse possession fall far short of the time necessary for title to ripen in them attack the tax title of plaintiffs? "The defendant in a suit to quiet title cannot question the right of the plaintiff unless he can show title in himself." *Bennett v. Morrison,* 78 Colo. 464, 242 Pac. 636. We paraphrase from the case of *Nobel v. You Bet Mining Co.,* 22 Calif. App. (2d) 623, 72 P. (2d) 205: "Whatever title appellants [Lowrys] had or have to this property must depend entirely upon the strength of such title as shown by the evidence in the case; it cannot be predicated upon the weakness of another's claim of title; being predicated upon the claim of adverse possession by appellants [Lowrys], it is incumbent upon appellants [Lowrys] to show clearly and conclusively that all of the requirements to perfect a title by adverse possession have been met before a decree quieting title upon such a ground can be entered. There is an entire lack of such

a showing in the instant case." See also *Williams v. Lusk,* 28 N.M. 146, 207 Pac. 576.

The judgment is reversed and the cause remanded with directions to enter a decree quieting title in the Harrisons to the property described in their complaint.

Mr. Chief Justice Moore, Mr. Justice Holland, and Mr. Justice Hall concurring.