No. 21856.

H. C. Whiteman *v.* Genevieve Mattson.

(446 P.2d 904)

Decided November 4, 1968.

184

Adams & Abbot, Harper L. Abbot, Alan N. Jensen, for plaintiff in error.

Jack Jenkins, for defendant in error.

*In Department.*

Opinion by Mr. Justice McWilliams.

This is a dispute between adjoining property owners and relates to the location of their common boundary line. Genevieve Mattson brought an action against H. C. Whiteman, alleging that Whiteman had constructed an apartment building which encroached upon her prop-

erty and as a result of the alleged encroachment she made claim for damages in the sum of $10,000. By answer Whiteman denied that he had in any manner encroached upon the Mattson property and alleged that any improvements or structures built by him were constructed upon premises owned by him.

Trial of the matter was to a jury. However, after all of the evidence was in, the trial court, upon motion, directed a verdict in favor of Mattson on the issue of so-called "liability." In other words, the trial court held as a matter of law that Whiteman had in fact encroached upon the Mattson property, and accordingly submitted to the jury only the issue of damages. By its verdict the jury determined Mattson's damages to be in the sum of $5,500 and judgment in this amount was entered in favor of Mattson and against Whiteman. By this writ of error Whiteman seeks reversal of the judgment thus entered against him.

The facts must be summarized in some detail if this opinion is to have any substance and meaning. We approach this task with at least a modicum of trepidation, as the record before us is unclear in certain particulars, and is generally quite hard to follow. And this is not meant to be any reflection on counsel, as it probably results from the very nature of the case. The following then is our resume of the facts as we understand them.

Blake's addition and Craig's addition are adjacent subdivisions in Pueblo, Colorado, with Craig's addition situate immediately to the east of Blake's addition. The Mattson and Whiteman properties abut, with the former being in Blake's addition and the latter in Craig's addition. In her complaint Mattson alleges, and the evidence supports her allegation, that Whiteman is the record owner of Lots one, two, and three in Block fifteen of Craig's addition. It is Mattson's further allegation that she is the record owner of certain property lying immediately to the *west* of the Whiteman property, which property is described as Lot seven, and the east five

feet of Lot eight, in Block fifteen in Blake's addition, "and also that certain strip of land twenty (20) feet in width and one hundred twenty (120) feet in length adjoining said Lot seven (7) and Lot three (3), Block fifteen (15), of Craig's addition . . . ."

Upon trial it was established, and we believe this fact to be very significant and the key to the whole controversy, that there simply was no "strip of land twenty (20) feet in width and one hundred twenty (120) feet in length adjoining said Lot seven (7) and Lot three (3), Block fifteen (15) of Craig's addition." Surveys clearly indicated that though Lot seven and Lot three may not actually abut, there is at the most only a very narrow strip of land between the two lots above mentioned, perhaps 4-6 feet in width, but nowhere near the 20 feet described in the Mattson deed.

In this general connection the witness Elliot, a professional engineer and land surveyor, testified that he surveyed the Whiteman property in 1962. This witness testified that as a result of his survey he determined that Lots one and two in Block fifteen in Craig's addition were so-called "normal" lots in that each was 44 feet in width. The witness explained, however, that the width of Lot three in that same block, depended entirely on the location of the so-called sixteenth line, which line constituted the western boundary of Craig's addition as well as the western boundary of Lot three. After locating this sixteenth line, it was then determined by this witness that Lot three was only 40.84 feet in width at the front of the lot and 38.47 feet in width at the rear of the lot. And as we understand it, Mattson does not challenge the accuracy of this survey and, as will be referred to in a moment, the trial court in its rulings declared the survey to be an "accurate" one.

Another very significant fact is that the aforementioned survey definitely established that the apartment house about which Mattson complains was so constructed as to be completely situate upon Lots one, two,

and three. In other words, the evidence is that the apartment house in question was constructed on the three lots owned by Whiteman.

So much then for our recitation of background material and any further reference thereto will only be made as such as deemed essential to an understanding of the several contentions of the disputants. At the conclusion of the plaintiff's evidence Whiteman moved for a directed verdict in his favor. The motion was denied. After putting on his evidence, Whiteman renewed this motion, which motion was again denied.

Mattson then moved for a directed verdict in her favor on the issue of so-called "liability" and this the trial court granted. In thus holding the trial judge declared that the western boundary line of Lot three as established by survey "was accurate insofar as lot description is concerned." However, the trial judge then went on to hold that regardless of that fact Mattson still had a "right" to a strip of land 20' x 120' lying immediately to the east of the aforesaid Lot seven and that this right was "derived both by grant and by adverse possession." As an alternative finding, the trial judge also held that this right resulted from the fact that Mattson occupied this particular land under color of title with payment of taxes thereon for about 20 years. The trial court then found as a matter of law that Whiteman did "enter into and upon the land" belonging to Mattson, although there was no determination as to the extent of the encroachment. It was on this general basis, then, that the trial court directed the jury to return a verdict in favor of Mattson and submitted to the jury for its determination the issue of damages. And, as above noted, the jury fixed Mattson's damages to be in the amount of $5,500.

In our view of the matter it was proper under the circumstances for the trial court to treat the issue of so-called "liability" as a matter of law and in connection therewith to direct a verdict. The trial court

committed error, however, in directing a verdict for Mattson and on the contrary should have granted Whiteman's motion for a directed verdict and directed a verdict in his favor. Before setting forth our views on the matter, we would note that even assuming that there was an encroachment, there is insufficient evidence to support the jury's determination that Mattson's damages were in the sum of $5,500. But, as indicated, our analysis of the matter leads us to conclude that there was no encroachment and that the jury should have been directed to return a verdict for Whiteman.

By a warranty deed executed and delivered in 1947 the following described land was conveyed to Mattson: Lot seven, and the east five feet of Lot eight in Block fifteen in Blake's addition, and "that certain strip of land twenty (20) feet in width and one hundred twenty (120) feet in length adjoining said Lot seven (7) and Lot three (3), Block fifteen (15) of Craig's addition . . . ." As indicated, Mattson makes no claim of any record ownership of Lot three. Indeed, it is quite clear that by the aforementioned deed Mattson acquired no interest whatsoever in the aforesaid Lot three and that, on the contrary, the *eastern* boundary of the property which was conveyed to Mattson, whatever the extent be of the property thus conveyed, was the *western* boundary of Lot three. Also, as above indicated, the survey, which was accepted by the trial court as being "accurate," clearly established that there was no strip of land 20′ in width and 120′ in length "adjoining" the aforesaid Lots seven and three. It thus becomes evident that the legal description in the Mattson deed is inaccurate and that the calls contained therein are inconsistent.

██ Concerning the general order of precedence as between different calls, the following appears in 12 Am. Jur. 2nd 603:

"Where the calls for location of boundaries to land are inconsistent, other things being equal, resort is to be had

first to natural object or land marks, next to artificial monuments, then to adjacent boundaries (which are considered a sort of monument), and thereafter to courses and distances."

\* \* \* \*

"In determining boundaries on a tract of land, it is not permissible to disregard any of the calls if they can be applied and harmonized in any reasonable manner, but if there is an actual contradiction between calls in the description of the land, so that they are irreconcilable, the court may reject or disregard the one which is false or mistaken."

Colorado would appear to be in accord with the general rule set forth immediately above. See, for example, *Cullacott v. Cash Gold and Silver Mining Co.,* 8 Colo. 179, 6 P. 211 where it was held that courses and distances are assigned the lowest place in the scale of evidence, as being the least reliable, and *Davies v. Craig,* 70 Colo. 296, 201 P. 56, where it was held that courses, distances and quantities yield to monuments.

Insofar as the distance call is concerned, the Mattson deed purported to set the eastern boundary of the Mattson property 20 feet east of the eastern boundary of Lot seven. At the same time the deed clearly recognized that the eastern boundary of the Mattson property was the western boundary of Lot three. In this circumstance the so-called monument call, *i.e.,* the boundary of the adjacent lot, takes precedence over the distance call. Hence we conclude that Mattson is not, and never was, the record owner of any part of Lot three. Furthermore, Mattson never did hold any portion of Lot three under any color of title; nor did she ever pay any taxes on Lot three.

It would appear to us that Mattson instituted the action on the premise that there really was a strip of land 20 feet in width and 120 feet in length situate between Lots seven and three and that Whiteman had encroached upon that particular strip of land to which she had

record title with his apartment house. When it became clear that there was no such strip of land and that the apartment house complained of was constructed on Lots one, two, and three, Mattson shifted her theory of the case to one of adverse possession, claiming that regardless of the record title she somehow acquired an interest in Lot three through her adverse possession thereof. This matter was not pleaded, nor is there anything to indicate that the parties consented to the injection of that issue into the case. In this regard, however, it should be noted that the trial court in one of its alternative findings ruled for Mattson on the basis of adverse possession. Resolution of this phase of the case requires that we inquire into the manner in which Whiteman obtained title to Lots one, two, and three.

Lots one, two, and three were sold for unpaid taxes and a treasurer's tax deed to the property was issued in 1947. Thereafter title to Lots one, two, and three was quieted and the tract was subsequently conveyed to Whiteman. And after having his property surveyed, Whiteman in 1962 commenced construction of his apartment house. It was when the bulldozer uprooted some trees and bushes, as well as a fence, all of which Mattson believed to be on her property (but which were a few feet over her property line and on Lot three) that this dispute arose. The present action was thereafter brought in 1963.

Mattson asserts here that from 1925 to 1962 she and her predecessors in title were in continuous adverse possession of an undetermined portion of Lot three. We have heretofore held, however, that the issuance of a valid treasurer's deed creates a virgin title erasing all former interests in the land. *Harrison v. Everett*, 135 Colo. 55, 308 P.2d 216. See also *Jacobs v. Perry*, 135 Colo. 550, 313 P.2d 1008. Hence, in the instant case any adverse possession of Lot three, or any part thereof, occurring prior to 1947 became ineffective with the issuance in that year of a valid treasurer's deed. Furthermore, it is

quite evident that the eighteen year period prescribed by C.R.S. 1963, 118-7-1 could not have run *subsequent* to 1947, for it was in 1962 when Whiteman constructed his apartment house on the aforesaid Lots one, two, and three. Therefore, the determination by the trial court that Mattson somehow acquired an interest in Lot three by virtue of adverse possession is error.

Finally, under the circumstances of the instant case, Mattson is in no position to launch at this late date an attack on the tax title given Whiteman's predecessors in interest. See *Harrison v. Everett, supra.*

Accordingly, we conclude that the trial court erred in holding that Mattson had an interest in Lot three. To the contrary Mattson had *no* interest in Lot three, be it on the theory of record ownership, color of title or adverse possession. Hence, the trial court should have granted Whiteman's motion — and not the Mattson motion — for a directed verdict, for the very good reason that Whiteman did not encroach on the Mattson property. We are not unsympathetic to Mrs. Mattson's plight, because no doubt in good faith she actually believed that she owned a strip of land 20 feet in width lying to the east of Lot seven. But the fact of the matter is that she did not. And Whiteman should not now be called upon to pay for a mistake which was not his.

The judgment is therefor reversed and the cause remanded with direction that the trial court enter judgment in favor of Whiteman.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE DAY and MR. JUSTICE KELLEY concur.