No. 22383.

ENID M. LINVILLE, AS EXECUTRIX OF THE ESTATE OF LO-RENZO W. LINVILLE, DECEASED *v.* WILLIAM C. RUSSELL, JR.
(452 P.2d 18)

Decided March 24, 1969.    Rehearing denied April 14, 1969.

ELIAS J. CANDELL, for plaintiff in error.

ALBERT B. DAWKINS, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE HODGES.

DURING the pendency of this writ of error, Lorenzo W. Linville, the plaintiff in the trial court, died. Enid M. Linville, as Executrix of the Estate of Lorenzo W. Linville, deceased, has now been substituted as the plaintiff in error and will be referred to as the plaintiff herein.

In a quiet title action brought by Lorenzo W. Linville, the defendant Russell answered and counterclaimed alleging ownership of a portion of the subject property involved by virtue of three tax deeds. In his counterclaim, Russell prayed that title to this portion be quieted in his favor. The property described in the complaint is contiguous, however, for the purpose of this action, it is divided into and referred to as Plots 1, 2 and 3. As to Plots 1 and 2, Lorenzo W. Linville was the beneficiary of a judgment in his favor and this part of the judgment is not challenged here. Only Plot 3 is in contention and the plaintiff by this writ of error claims the court erred in adjudging fee title thereto in the defendant on his counterclaim.

Linville based his claim to ownership of Plot 3 on adverse possession. He alleged that Plot 3 is the "front yard" of the house on Plot 1 and has been so used for over 20 years, but not by him but by a predecessor from whom he inherited the property. Defendant acquired his record interest in Plot 3 by three tax deeds, two of which were executed in 1955 and the third in 1960.

The rule in Colorado is clear: Title by adverse possession vanishes when the treasurer issues his valid deed for unpaid taxes. *Harrison v. Everett*, 135 Colo. 55, 60, 308 P.2d 216, 219. See also *Whiteman v. Mattson*, 167

Colo. 183, 446 P.2d 904 and *Hartley v. Ruybal*, 160 Colo. 80, 414 P.2d 114. However, the plaintiff claims that the tax deeds to defendant are void, and hence, did not erase Linville's title allegedly acquired by adverse possession.

The single question to be decided, therefore, is this: Are the tax deeds which conveyed Plot 3 to defendant valid?

Plaintiff contends the tax deeds are invalid for three reasons:

(1) the delinquent tax list was improperly published;

(2) the tax deeds are deficient as to seal; and,

(3) the property description in the tax deeds is fatally vague.

We find these contentions to be without merit.

I.

■ The trial court made a specific finding that the Gilpin County Treasurer published the delinquent tax lists for each of the relevant years in a newspaper which had been duly selected by the County Commissioners as the official county newspaper. This selection was for all official county publications and did not specifically refer to delinquent tax lists. The trial court concluded that this general selection was a sufficient compliance with C.R.S. 1963, 137-9-5. We agree with this conclusion.

Plaintiff states that *Commissioners v. Wood,* 80 Colo. 279, 250 P. 860, appears to require a specific selection. Our examination of this case, however, reveals that the issues posed and resolved in that case bear no resemblance to the issue here. In the *Commissioners v. Wood* case, it was held, among other things, that the Commissioners were required to pay a selected newspaper for publishing a delinquent tax list even though no specific award of the contract had been made. In that case, the court in construing C.L. § 7403 and § 7406, which are substantially the same as C.R.S. 1963, 137-9-2 and 137-9-5 respectively, held that "award the contract" as stated in C.L. § 7403, means "select the newspaper" as required in C.L. § 7406. In substance, it was therein held when a

newspaper is selected, it is not additionally required that the treasurer must award a contract to the newspaper for the publication of the delinquent tax list.

In *Blue River Company v. Rizzuto,* 135 Colo, 472, 312 P.2d 1023, it was held that the failure of the county commissioners to make a selection or a designation of a newspaper is jurisdictional and that this failure to comply with the statute invalidates and voids a treasurer's tax deed.

In the instant case, the board of county commissioners made a selection of a newspaper for each of the pertinent years. Therefore, the holding of the *Blue River Company* case is inapplicable.

C.R.S. 1963, 137-9-5 provides as follows:

"It shall be the duty of the board of county commissioners of each county to select a newspaper of general circulation published in said county, in which the treasurer shall publish the delinquent tax list of their respective counties, and for such service the commissioners shall allow payment, not exceeding the rate as provided by law."

█ It is our view and interpretation of this statute that it does not require the board of county commissioners to make a specific selection of a newspaper for the publication of delinquent tax lists but that if the board of county commissioners makes a general selection of a newspaper, and the treasurer uses that newspaper, there has been compliance with this statute.

II.

██ We hold that the seals on the tax deeds were sufficient to comply with C.R.S. 1963, 137-9-37. *Langley v. Young,* 72 Colo. 344, 211 P.642. On all three tax deeds there appears, next to the County Treasurer's signature, the printed word "seal," encircled by a printed scroll. On two of the deeds, both a printed and an inked scroll appears, but the omission of an inked scroll on the third deed has no legal import. *Carlile v. People,* 27 Colo. 116, 59 P.48 Since 1879, Colorado statute has authorized the substitution of a scroll in lieu of a seal. L. 79, p. 170, § 1; now C.R.S. 1963, 118-1-25. Since 1892, this statute has

been construed to apply to all instruments, including tax deeds. *Waddingham v. Dickson*, 17 Colo. 223, 29 P. 177.

### III.

■■ As to the sufficiency of the property description in the tax deeds, we perceive no problem. Two of the tax deeds describe the subject property as ⅘ and ⅕ respectively of the "Oom Paul Mining Claim, described in Book 122 at page 82 of Gilpin County Records, situate in Central City." This description by reference to a prior deed recorded in the same county is sanctioned by C.R.S. 1963, 118-6-8. Although the deed so referred to contains certain exceptions, they are identified by either name and government survey number or by lot owner; furthermore, the defendant explicity disclaimed any interest in the exceptions; and also, the record does not show that any of the exceptions are contained in Plot 3. The third tax deed reads in pertinent description: "Bates Lode Mining Claim, U.S. Survey No. 267." The description of the property being by name of the patented mining claim or by government survey number specifically complies with the assessment schedule requirements of C.R.S. 1963, 137-2-14.

■ The deed descriptions readily meet the test for sufficiency as stated in *Harrison v. Everett*, 135 Colo. 55, 308 P.2d 216:

"If the description in a deed identifies, or furnishes the means for identifying, the property conveyed, it performs its function."

And contrary to plaintiff's argument, C.R.S. 1963, 137-2-14 does not require the delinquent tax list publication to identify the mining claim as "lode" or "placer." We therefore hold that the following three Gilpin County Treasurer's deeds which convey Plot 3 to defendant Russell are valid:

(1) Treasurer's deed, dated July 26, 1955, recorded in Book 221, page 394, Gilpin County.

(2) Treasurer's deed, dated August 11, 1955, recorded in Book 221, page 397, Gilpin County.

(3) Treasurer's deed, dated November 16, 1960, recorded in Book 239, page 511, Gilpin County.

## IV.

As their final ground for reversal, plaintiffs urge that equity dictates title to Plot 3 be quieted in plaintiff Linville, because the land is the "front yard" of the house which he inherited. This argument of "equity" does not commend itself to the court in light of the fact that far more than the "front yard" is dependent upon the outcome of this lawsuit. The tax deed of November 16, 1960 to defendant includes Bates Lode Mining Claim, U.S. Survey No. 516 and Bates Lode Mining Claim, U.S. Survey No. 267, which had been assessed to Gold Mines Consolidated, Inc. In a quitclaim deed dated October 9, 1963, Gold Mines Consolidated, Inc. conveyed its interest to the same two Bates Lode Mining Claims, U.S. Surveys Nos. 516 and 267, to Gilpin Investment Company. In the trial court, this company and Elias J. Candell, who holds the majority of its stock, were made parties plaintiff on the defendant's motion. Also, Elias J. Candell holds a receipt and option on Plots 1, 2 and 3. As we view this, Plot 3 is merely the small visible portion of the "iceberg," and that far greater property interests are the hidden issues in this quiet title action. The "front yard equity" argument of the plaintiff on this writ of error is therefore clearly without merit.

Judgment affirmed.

MR. CHIEF JUSTICE MCWILLIAMS and MR. JUSTICE PRINGLE concur.