MAURICE KILLION *et al.*, Plaintiffs-Appellants, v. ROSCOE MEEKS, Defendant-Appellee.

Fifth District   No. 5—01—0924

Opinion filed September 13, 2002.

Samuel E. Bauerle, of Salem, for appellants.

Daniel R. Price, of Wham & Wham, of Centralia, for appellee.

JUSTICE WELCH delivered the opinion of the court:

The dispute in this case pertains to the ownership of a tract of land. Maurice Killion and Nina Killion (plaintiffs) contend that they acquired ownership of the disputed tract via adverse possession. Roscoe Meeks (defendant) contends that he acquired ownership after purchasing a quitclaim deed from the Marion County trustee, who, in turn, had acquired the land via a tax deed. On January 29, 2001, plaintiffs filed a complaint in the circuit court of Marion County seeking a declaration that they are the rightful owners of the disputed tract and seeking to enjoin defendant from entering the disputed property. Defendant responded with a motion to dismiss, filed pursuant to section 2—619 of the Illinois Code of Civil Procedure (735 ILCS 5/2—619 (West 2000)), contending that the issuance of the tax deed extinguished plaintiffs' claim of ownership by adverse possession. The circuit court granted defendant's motion to dismiss. Plaintiffs now appeal. We affirm.

On appeal, plaintiffs raise the following three issues: (1) whether the circuit court erred in granting defendant's motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure, (2) whether the circuit court's dismissal of plaintiffs' complaint was in error where the circuit court failed to join a necessary party, and (3) whether the circuit court erred in denying plaintiffs leave to amend their complaint.

According to the record, plaintiffs and defendant own adjacent tracts of land. Defendant purchased his tract from the Marion County trustee in January 2000. Plaintiffs purchased their tract in 1957. According to plaintiffs' deed, their property is a rectangular parcel. Its boundary begins at a point 120 feet east of a point on the north line of Cormick Street. The boundary then extends 80 feet east along Cormick Street, 207.5 feet north from Cormick Street, 80 feet west, and then 207.5 feet south. Defendant's property, according to his deed, is

directly west of plaintiffs' property, and it is also rectangular. Its boundary begins at a point on the north line of Cormick Street. The boundary then extends 120 feet east along Cormick Street (to the point where plaintiffs' property begins), then 207.5 feet north of Cormick Street (this is a common boundary with plaintiffs' property), 120 feet west, and 207.5 feet south. According to the deeds, the western border of plaintiffs' property is the eastern border of defendant's property.

According to plaintiffs' complaint, the dispute in this case arose when defendant "caused fill dirt to be deposited" upon the eastern portion of defendant's property as described in defendant's deed. Plaintiffs' complaint alleges that they had acquired ownership of this portion of defendant's property (approximately 18 feet east-west and 207.5 feet north-south) by adverse possession. Plaintiffs claim that they have been in open, notorious, and continuous use of this property for more than 20 years. (In fact, plaintiffs contend they have used this property for about 40 years.) Plaintiffs sought a declaratory judgment and a permanent injunction.

On July 9, 2001, a hearing was conducted pursuant to defendant's motion to dismiss. After hearing arguments from the parties, the circuit court granted defendant's motion. The circuit court stated, "[T]he [relevant] statute *** and the common law supporting the statute plainly says [sic] that claims for adverse possession, the kind of claim that arises over time, *** is [sic] extinguished [by the tax deed]." Plaintiffs' motion to reconsider was denied on December 12, 2001. We now turn to the issues raised by plaintiffs on appeal.

■ The first issue raised by plaintiffs on appeal is whether the circuit court erred in granting defendant's motion to dismiss. Plaintiffs begin by arguing that the circuit court erred in granting defendant's motion to dismiss because defendant "improperly attacked [plaintiffs'] complaint by [section] 2—619 motion." Plaintiffs contend that defendant should have filed a motion to dismiss pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2000)) and not section 2—619. Because this is the first time plaintiffs have raised this argument and this argument was not presented to or considered by the circuit court, this argument is waived. See *American National Bank & Trust Co. v. City of Chicago*, 192 Ill. 2d 274, 280 (2000) (waiver applied where the plaintiff failed to raise before the trial court the argument that the defendant's section 2—615 motion to dismiss should not have been considered by the trial court because portions of the motion should have been included in a motion brought under section 2—619).

Plaintiffs' next argument is, "Assuming Plaintiff [sic] properly at-

tacked [the] complaint by [section] 2—619 motion, the court still, nonetheless, erred in granting said motion." Plaintiffs argue that the circuit court erred in granting defendant's motion to dismiss after concluding that the tax deed extinguished plaintiffs' claim of ownership by adverse possession. Plaintiffs contend that the circuit court's decision was in error because plaintiffs acquired title to the disputed property by adverse possession prior to the issuance of the tax deed and that, therefore, the tax deed did not extinguish their title. We disagree.

Although we have not found an Illinois case directly on point and the parties cite to none, defendant relies heavily on *Crawford v. Love,* 243 Ill. App. 3d 977 (1993), where a similar issue was addressed. In *Crawford,* the defendants took possession of a disputed tract of real estate in 1960. In 1969, nine years into the 20-year adverse possession holding period, the clerk of Cook County issued a tax deed conveying the premises to a tax sale buyer. *Crawford,* 243 Ill. App. 3d at 978. Although the tax deed was issued in 1969, the defendants continued their possession of the disputed tract until 1987.

Apparently, sometime during 1987, the plaintiff, relying on her tax deed, filed a complaint to assert her rights over the disputed property. The defendants argued that the plaintiff was precluded from asserting any rights over the disputed property because the defendants had obtained ownership of the property by adverse possession. The plaintiff argued that the tax deed tolled the running of the limitations period on the defendants' adverse possession claim. The circuit court agreed with the plaintiff, and the appellate court affirmed the circuit court.

In its analysis, the court turned to the Revenue Act of 1939 (the Act) (Ill. Rev. Stat. 1969, ch. 120, par. 482 *et seq.* (repealed by Pub. Act 88—455, eff. January 1, 1994 (1993 Ill. Laws 3497—831) (now see 35 ILCS 200/22—5 *et seq.* (West 2000)))), which governed the issuance of tax deeds. The court noted that prior to a 1951 amendment of the Act, almost any defect or deficiency, no matter how minute, in a tax deed proceeding that led to the issuance of a tax deed made a deed suspect and generally void. *Crawford,* 243 Ill. App. 3d at 979. The General Assembly then amended the Act in 1951 to meet an alarming increase in the rate of tax delinquencies. The amendment to the Act rendered tax titles incontestable except by direct appeal and provided a tax buyer with assurance that his title and rights to the property would be unimpaired. The court noted in *Crawford* that this amendment represented "the final action in a long battle between the court and the legislature as to the merchantability of land titles derived from annual tax sale proceedings." *Crawford,* 243 Ill. App. 3d at 979.

Then, in 1965, the General Assembly again amended the Act by

adding section 266b (Ill. Rev. Stat. 1969, ch. 120, par. 747b (now see 35 ILCS 200/22—70 (West 2000))). This section specifically provided that a tax deed shall not extinguish or affect easements, covenants running with the land, or rights-of-way for water, sewer, electricity, tax, telephone, or other public service uses. *Crawford*, 243 Ill. App. 3d at 980. In *Crawford*, the court then took note that an enumeration of one or more certain or specific items in a statute excludes other things or items that are not mentioned in the statute. *Crawford*, 243 Ill. App. 3d at 980. Interestingly, a claim of ownership by those who obtained property through adverse possession was not protected by this amendment.

In ruling that the tax deed tolled the period of limitations regarding an adverse possession claim, the court stated: "We need not only look to the 1951 amendments to the Revenue Act to vest the grantee of a tax deed with rights superior to that of an adverse possessor. As early as 1890, Illinois tax deeds have defeated the continuity 'of the running of [an adverse possessor's] title, because no 20 years had elapsed from the time he entered until the title accrued under the tax-title.' " *Crawford*, 243 Ill. App. 3d at 980, quoting *Daveis v. Collins*, 43 F. 31, 34 (N.D. Ill. 1890). The court recalled, "[A] tax deed issued pursuant to a judicial process grants to the purchaser a new and independent title, free and clear from all previous titles and claims of every kind and character." *Crawford*, 243 Ill. App. 3d at 980. In concluding that the tax deed tolled the running of the 20-year holding period for an adverse possessor, the court stated, "We recognize the strong public policy statement which the several amendments to the Revenue Act represent, in encouraging the recognition, validity[,] and commercial acceptability of tax deeds ***." *Crawford*, 243 Ill. App. 3d at 981.

As plaintiffs point out, *Crawford* can easily be distinguished factually from the instant case. In *Crawford*, the 20-year holding period had not yet run before the tax deed was issued. In the instant case, the 20-year holding period had run long before the tax deed was issued. According to plaintiffs, this distinction is pivotal because the plaintiff in *Crawford* never had a claim of ownership because the 20 years had never run. Although we agree that the cases do present substantially different factual scenarios, we believe that the strong public policy of having tax deeds provide clear title remains and that the policy demands a result similar to the *Crawford* case.

As the court pointed out in *Crawford*, "[A] tax deed issued pursuant to a judicial process grants to the purchaser a new and independent title, free and clear from all previous titles and claims of every kind and character." *Crawford*, 243 Ill. App. 3d at 980. The court also

pointed out that the Act was amended to provide a tax buyer with the assurance that his title and rights to the property would be unimpaired. Section 22—55 of the Property Tax Code (the Code) (35 ILCS 200/22—55 (West 2000)), entitled "Tax deeds to convey merchantable title," still provides, "This Section shall be liberally construed so that tax deeds shall convey merchantable title." Furthermore, section 22—70 of the Code continues to provide that a tax deed will not extinguish certain easements and covenants, while saying nothing about the preservation of the claims of ownership of an adverse possessor. 35 ILCS 200/22—70 (West 2000).

■ The primary purpose of the Act was to render tax deeds incontestable and allow a tax deed to create a new and independent title, free and clear from all previous titles and claims of every kind. *In re Application of the County Collector for Judgment & Order of Sale Against Lands & Lots Returned Delinquent for Non-Payment of General Taxes & Special Assessments for the Year 1983 & Prior Years*, 206 Ill. App. 3d 22, 28 (1990). The policy behind the law has not changed and still prevails in the Code. The Code provides that once the statutory requirements are complied with and tax purchasers are issued a valid tax deed, they acquire merchantable title under the Code (35 ILCS 200/22—55 (West 2000)), free and clear from all previous titles and claims of every kind and character. *General Iron Industries, Inc. v. A. Finkl & Sons Co.*, 292 Ill. App. 3d 439, 446 (1997). There is nothing in the Code that carves out an exception for the interests of an adverse possessor, and this court is not the place to conduct such a carving. Accordingly, even though an adverse possessor has apparently satisfied the adverse possession requirements, we believe that the proper issuance of a tax deed extinguishes the claims of the adverse possessor. As a result, we find no error with the circuit court's decision to grant defendant's motion to dismiss.[1]

■ The second issue raised by plaintiffs on appeal is whether the circuit court's dismissal of plaintiffs' complaint was in error where the circuit court failed to join necessary parties. Plaintiffs argue that the Marion County trustee or Marion County is a necessary party to this action and should have been joined. A necessary party is one whose presence in the suit is required to (1) protect an interest that the absentee has in the subject matter of the controversy which would be

---

[1]We note that our decision is in conformity with other jurisdictions that have decided this issue. See *Overstreet v. City of Raleigh*, 75 N.C. App. 351, 330 S.E.2d 643 (1985); *Leciejewski v. Sedlak*, 116 Wis. 2d 629, 342 N.W.2d 734 (1984); *Label v. Cleasby*, 13 Wash. App. 789, 537 P.2d 859 (1975); *Whiteman v. Mattson*, 167 Colo. 183, 446 P.2d 904 (1968).

materially affected by a judgment entered in his or her absence, (2) reach a decision that will protect the interests of those who are before the court, or (3) enable the court to make a complete determination of the controversy. *Treschak v. Yorkville National Bank*, 237 Ill. App. 3d 855, 859 (1992).

On appeal, plaintiffs simply argue, "The Marion County Trustee, or Marion County, is clearly a necessary party as shown by the record." Plaintiffs present no further argument or analysis demonstrating this alleged necessity. It is interesting to note that at the hearing on defendant's motion to dismiss, plaintiffs contested the circuit court's suggestion that maybe plaintiffs should have included the Marion County trustee or Marion County in their suit. Plaintiffs rejected the circuit court's suggestion, claiming that they did not believe that joining these parties was necessary because plaintiffs were not challenging the validity of the tax deed. It would appear that this argument is therefore waived. Nevertheless, because we do not believe that the Marion County trustee or Marion County is a necessary party to this action, we reject plaintiffs' contention on that ground.

■ The record is clear that the Marion County trustee conveyed to defendant full legal and equitable title and that neither the Marion County trustee nor Marion County has an interest any longer in the title to the property. Even so, plaintiffs now contend that one of these parties is necessary, yet they fail to argue how the Marion County trustee or Marion County would enable the court to make a decision protecting the interests of plaintiffs or defendant or enable the court to make a complete determination of the controversy. Plaintiffs' complaint merely seeks a determination of ownership based upon plaintiffs' adverse possession claim versus defendant's tax deed claim. Plaintiffs in no way, shape, or form attack the validity of the procedures that surrounded the issuance of the tax deed. Therefore, because plaintiffs have failed to show that the Marion County trustee or Marion County is a necessary party in this case, we cannot say that the circuit court erred by granting defendant's motion to dismiss by failing to join the Marion County trustee or Marion County as a necessary party.

■ The third and final issue raised by plaintiffs on appeal is whether the circuit court erred in denying plaintiffs leave to amend their complaint. No written motion was ever presented to the circuit court, and the issue of amending their complaint was mentioned by plaintiffs for the first time at the hearing on defendant's motion to dismiss, after plaintiffs were asked by the court for their "last word." Plaintiffs then stated that if the circuit court found that defendant's motion to dismiss should be granted, plaintiffs would like "relief to

amend under [the] fact that the statute does provide for any private easement or easements created in good faith." Although the circuit court stated that it did not believe that plaintiffs had a proper easement that is preserved by the statute, it commented in its final statement that there might be a motion or some other cause of action for an easement that would not be affected by the day's order. At the hearing on the motion to reconsider, immediately after the circuit court issued its ruling denying plaintiffs' motion to reconsider and after the court again asked plaintiffs for their "last word," plaintiffs asked for leave to file an amended complaint regarding the question of easements. The circuit court noted that it would have considered it before ruling on the motion to dismiss, and it denied plaintiffs' motion to amend.

On appeal, plaintiffs argue that the circuit court's decision refusing leave to amend was an abuse of discretion. Plaintiffs contend that the circuit court was "well aware of the reasons for plaintiffs['] request for leave to amend" and that justice would have been served by allowing the amendment.

In response, defendant argues that no written proposed amendment was tendered and no serious request was made to amend the complaint until after the final judgment was entered. In light of these circumstances, defendant argues that it cannot be said that the circuit court abused its discretion in denying plaintiffs' motion to amend.

The question whether to allow the plaintiffs to amend their complaint rests within the sound discretion of the circuit court. *Cochran v. Perry County Road District No. 1*, 295 Ill. App. 3d 1089, 1094 (1998). For a determination whether to grant a motion for leave to amend, the following four factors must be evaluated: (1) whether the proposed amendment would cure the defective pleading, (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment, (3) whether the proposed amendment is timely, and (4) whether previous opportunities to amend the pleading could be identified. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992). In the instant case, there is nothing to indicate that the amendment would have cured a defective pleading (as opposed to creating a whole new cause of action), the circuit court indicated that defendant might be prejudiced by the late filing, the proposed amendment was clearly not timely because plaintiffs consistently waited until their "last word" before bringing it up, and the record provides no basis upon which it can be seriously argued that there were not previous opportunities to amend the pleading. Based on the record in this case, we cannot say that the circuit court abused its discretion in denying plaintiffs' motion to amend. Accordingly, we reject the third and final issue raised by plaintiffs on appeal.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

CHAPMAN and GOLDENHERSH, JJ., concur.