25CA0557 Meridian Trust v Loboguerrero 02-12-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0557
Jefferson County District Court No. 23CV31291
Honorable Christopher C. Zenisek, Judge

---

Meridian Trust,

Plaintiff-Appellant,

v.

Marianna Loboguerrero and Maurice Loboguerrero,

Defendants-Appellees.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE SCHOCK
Grove and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 12, 2026

---

Michael T. Kane, Evergreen, Colorado, for Plaintiff-Appellant

Robinson & Henry, P.C., Benjamin C. Whitney, Denver, Colorado, for
Defendants-Appellees

¶ 1    Plaintiff, Meridian Trust, appeals the judgment in favor of defendants, Mariana[1] and Maurice Loboguerrero, on their claims for adverse possession and boundary by acquiescence and the parties' competing claims for quiet title and trespass.  We affirm.

## I.    Background

¶ 2    Meridian Trust and the Loboguerreros own two adjacent properties, which we will refer to as the Meridian Property and the Loboguerrero Property.  The Meridian Property is a thirty-five-acre lot that borders the much smaller Loboguerrero Property to the east and south.  In the aerial photo below, the Meridian Property is the large lot that occupies most of the photo.  The Loboguerrero Property is the trapezoid-shaped lot at the top center-left.

---

[1] Although the caption spells Mariana Loboguerrero's first name as "Marianna," we use the spelling used in the parties' briefs, the pleadings and orders in the district court, and the deeds.



(The Meridian and Loboguerrero Properties)

¶ 3    The source of the parties' dispute is a fence that runs between the two properties along (or near) a portion of the Loboguerrero Property's eastern boundary.  The fence — drawn in the photo below — extends from the home on the Loboguerrero Property out to the property line, runs generally along the property line, and then returns to the home, thus forming a yard for the home.  The fence was constructed by the prior owner of the Loboguerrero

Property, along with the home, no later than July 29, 1993.

Meridian Trust contends that the fence encroaches on its property.



(Fence Between the Meridian and Loboguerrero Properties)

¶ 4     Between 1993 and 2006, the prior owner of the Loboguerrero

Property used the fenced-in yard as his property.  In 2006, Mariana

bought the property, and her brother, Maurice, moved in.[2]  Mariana

later transferred title to Maurice and herself as joint tenants.  Since

---

[2] Because the defendants in this case share the same last name, we refer to them by their first names, intending no disrespect.

2006, Maurice has treated the yard as part of the Loboguerrero Property, as has his partner, who has lived there since 2016.

¶ 5    Rhonda Lore, the trustee of Meridian Trust, along with her then husband, bought the Meridian Property in June 2012, later conveying it to Meridian Trust. Lore bought the Meridian Property from the Federal National Mortgage Association (FNMA), which had acquired it through a foreclosure sale on February 18, 2011.

¶ 6    In April 2014, Lore came to believe that the Loboguerreros' fence had been moved and encroached onto the Meridian Property. She told Maurice and asked him to move the fence. Maurice, however, insisted that the fence was on the property line and refused to move it. In 2020, he made improvements to the fenced-in yard, leveling the land and adding a retaining wall. In 2023, he replaced sections of the original chain-link fence with a wooden corral fence.[3] And when Lore later crossed the fence to look at the property boundaries, Maurice called the police to report a trespass.

---

[3] When he replaced part of the fence in 2023, Maurice moved the fence line and extended the fence by ten to fifteen feet. During the litigation, the Loboguerreros agreed to return the fence to its pre-2023 location, and the district court ordered them to do so. The 2023 modifications are therefore not at issue in this appeal.

¶ 7    Meridian Trust filed this action against the Loboguerreros, claiming that the fence encroached onto the Meridian Property and seeking to quiet title in accordance with the deeded property line. Meridian Trust also claimed that Maurice had trespassed by performing work on the encroaching portion of the yard.

¶ 8    The Loboguerreros counterclaimed for quiet title, adverse possession, boundary by acquiescence, and trespass, seeking to establish the fence as the boundary between the properties. They asserted that the fence was on the property line, but if not, they had acquired ownership of the fenced-in area by adverse possession or by the acquiescence of Meridian Trust and its predecessors. They also alleged that Meridian Trust had trespassed when its agents entered the Loboguerrero Property to conduct a survey.

¶ 9    After a bench trial, the district court ruled in favor of the Loboguerreros on all claims. It found that neither party had successfully established the physical location of the property line. But it concluded that, even if the fence lies on the Meridian Property, the Loboguerreros had established adverse possession of the area within the fence because they and their predecessors had continuously possessed the land since the fence was built in 1993.

The district court therefore quieted title to the disputed land in favor of the Loboguerreros and granted their request to establish the fence as the property boundary. It then found in favor of the Loboguerreros and against Meridian Trust on the parties' respective trespass claims, awarding the Loboguerreros nominal damages.

## II.  Adverse Possession

¶ 10    Meridian Trust challenges the district court's adverse possession ruling in only one respect. It argues that the foreclosure of the Meridian Property and the associated public trustee's deed in February 2011 — seventeen years and seven months after the fence was built — interrupted the Loboguerreros' and their predecessor's possession of the disputed land, meaning they did not possess it for an uninterrupted period of eighteen years. We disagree.

### A.  Standard of Review and Applicable Law

¶ 11    Our review of a judgment after a bench trial presents a mixed question of fact and law. *State ex rel. Weiser v. Ctr. for Excellence in Higher Educ., Inc.*, 2023 CO 23, ¶ 33. We review the district court's factual findings for clear error and its legal conclusions de novo. *Kroesen v. Shenandoah Homeowners Ass'n*, 2020 COA 31, ¶ 55.

We review issues of statutory interpretation de novo. *Lind-Barnett v. Tender Care Veterinary Ctr., Inc.*, 2025 CO 62, ¶ 20.

¶ 12     To obtain ownership of real property by adverse possession, a claimant must prove that their possession was "actual, adverse, hostile, under a claim of right, exclusive, and uninterrupted" for eighteen years. *Trask v. Nozisko*, 134 P.3d 544, 549 (Colo. App. 2006). Eighteen years of adverse possession of land is "conclusive evidence of absolute ownership." § 38-41-101(1), C.R.S. 2025.

### B.     Effect of Foreclosure

¶ 13     Meridian Trust does not appeal the district court's findings that the Loboguerreros' possession of the disputed land within the fence was actual, adverse, hostile, exclusive, and under a claim of right. Nor does it challenge the finding that, aside from the 2023 modifications, the fence has remained in the same location since it was built in 1993, and thus, the Loboguerreros and their predecessor have possessed the disputed land for more than eighteen years. *See Trueblood v. Pierce*, 179 P.2d 671, 677 (Colo. 1947) (combining successive owners' periods of adverse possession under doctrine of tacking). Meridian Trust contends only that, under section 38-41-101(2), any adverse possession of the land

enclosed by the fence was interrupted by the county's "possession" of the Meridian Property during the foreclosure proceedings.

¶ 14    Section 38-41-101(2) provides that adverse possession does not apply against the state and that "[n]o possession . . . , no matter how long continued, of any land . . . . dedicated to or owned by the state of Colorado, or any county . . . shall ever ripen into any title, interest, or right against the state of Colorado, or such county."  In short, one may not adversely possess land owned by the state or its subdivisions.  *Glover v. Serratoga Falls LLC*, 2021 CO 77, ¶ 38; *see Bd. of Comm'rs v. Timroth*, 87 P.3d 102, 103 (Colo. 2004) ("[O]ne cannot adversely possess against the sovereign.").

¶ 15    We reject Meridian Trust's contention that this statute bars the Loboguerreros' adverse possession claim for two reasons.  First, the Loboguerreros do not assert their claim "against the state" or any other governmental entity.  § 38-41-101(2); *see also Glover*, ¶ 8 (noting that section 38-41-101(2) prohibits adverse possession claims "against any city or county").  They claim "title, interest, or right against" Meridian Trust — a private entity.  § 38-41-101(2).

¶ 16    Second, and relatedly, the disputed land was never "dedicated to or owned by the state of Colorado" or its subdivisions.  *Id.*; *cf.*

*Martini v. Smith*, 18 P.3d 776, 780 (Colo. App. 2000) (noting that parties could not claim ownership of road by adverse possession if it "remain[ed] a public roadway"), *aff'd*, 42 P.3d 629 (Colo. 2002). Meridian Trust's argument that the public trustee "possessed" the Meridian Property misunderstands the statute, as well as the public trustee's role in foreclosure proceedings.

¶ 17　　A deed of trust grants the public trustee the authority to sell property if the property owner defaults on the underlying debt. *See State ex rel. Coffman v. Robert J. Hopp & Assocs., LLC*, 2018 COA 69M, ¶ 6; § 38-38-100.3(7), C.R.S. 2025. But the public trustee does not "own" the foreclosed property. *See* § 38-35-117, C.R.S. 2025 (providing that deeds of trusts "shall not be deemed a conveyance . . . but . . . shall be deemed a lien"). Instead, legal title remains with the grantor of the deed of trust until it is conveyed to the purchaser via a confirmation deed. *See* § 38-38-501, C.R.S. 2025; 2 Stephen A. Hess, *Colorado Practice Series, Methods of Practice* § 68:5, Westlaw (7th ed. database updated June 2025) ("Although a deed of trust to the public trustee purports to convey legal title . . . , actually, legal title to such real property remains in the grantor of the deed of trust or his subsequent transferee.").

Thus, although the public trustee issued the confirmation deed, consistent with her statutory authority, title to the Meridian Property transferred from the prior owners directly to FNMA.

¶ 18 Meridian Trust cites *Harrison v. Everett*, 308 P.2d 216, 219 (Colo. 1957), for the proposition that "[t]itle by adverse possession vanishes" upon the issuance of a treasurer's deed following the sale of a tax lien. But unlike a foreclosure, which typically involves a lien by a private party, a tax lien is held by the government. *See Arnold v. Brent*, 2024 COA 104, ¶¶ 16-17. Indeed, in *Harrison*, the county acquired the property (not just the tax lien) through the treasurer's deed and owned it for seven years, thus implicating the rule that "[t]here can be no adverse possession against the government." *Harrison*, 308 P.2d at 219 (citation omitted).

¶ 19 Additionally, a treasurer's deed arising from a tax lien is unique in that it "has nothing to do with the previous chain of title; does not in any way connect itself with it[; and] is a breaking up of all previous titles." *Id.* (citation omitted). Thus, it "create[s] a virgin title erasing all former interests in the land." *Id.* In contrast, a confirmation deed after a foreclosure sale extinguishes only "liens and encumbrances junior to the lien foreclosed." § 38-38-501(1).

The chain of title otherwise remains intact. Aside from citing section 38-38-501(1), Meridian Trust does not develop any argument that an unripened period of adverse possession that began before the deed of trust was recorded and which could be cut off by the new owner is a junior lien or encumbrance within the meaning of the statute. *See Campbell v. Summit Plaza Assocs.*, 192 P.3d 465, 474 (Colo. App. 2008) (defining "encumbrance" as "a right or interest in land of a third party"); *see also Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 44 (declining to consider undeveloped, conclusory arguments), *aff'd*, 2021 CO 56.

¶ 20     Indeed, the supreme court has held that a foreclosure of the *adverse possessor's* property does not interrupt the period of adverse possession. *See Lively v. Wick*, 221 P.2d 374, 378 (Colo. 1950). We see no reason, based on the arguments presented in this case, why the same should not be true of a foreclosure of the *adversely possessed* property. *See Ocmulgee Props. Inc. v. Jeffery*, 53 P.3d 665, 667-68 (Colo. App. 2001) (holding that period of adverse possession spanned change in ownership of disputed property where prior owner "did not dispossess plaintiff" or take "legal action to regain possession of the land"); *Compart v.*

11

*Wolfstellar*, 906 N.W.2d 598, 607 (Minn. Ct. App. 2018) (holding that foreclosure sale of land in possession of adverse claimant does not interrupt continuity of adverse possession).

¶ 21     Finally, Meridian Trust correctly points out in passing that the district court erroneously stated that the burden of proof was a preponderance of the evidence.  In fact, the burden of proof for an adverse possession claim is clear and convincing evidence.  § 38-41-101(3)(a).  But Meridian Trust makes no argument that the district court's misstatement of the burden of proof affected its analysis or Meridian Trust's arguments on appeal — which turn entirely on the legal question of whether the foreclosure interrupted the period of adverse possession.  We therefore conclude that this error was harmless.  *See* C.A.R. 35(c) ("The appellate court may disregard any error or defect not affecting the substantial rights of the parties."); *Borer v. Lewis*, 91 P.3d 375, 382 (Colo. 2004) (holding that erroneous application of preponderance of evidence standard rather than clear and convincing evidence standard was harmless).

¶ 22     Thus, because the foreclosure of the Meridian Property did not interrupt the Loboguerreros' possession of the disputed land and Meridian Trust does not challenge the district court's adverse

possession ruling on any other ground, we affirm the judgment in favor of the Loboguerreros on their adverse possession claim.

### III.   Other Claims

¶ 23    Meridian Trust also contends that the district court erred by quieting title to the disputed land in favor of the Loboguerreros, finding that the fence is the boundary between the parties' properties, and finding in favor of the Loboguerreros on the parties' competing trespass claims.  But these arguments all depend on Meridian Trust prevailing on the first issue.  Because, as we have concluded, the Loboguerreros own the land inside the fence based on adverse possession,[4] the district court correctly quieted title to that land in their favor, declared the fence the property boundary, and found that one or more agents of Meridian Trust had trespassed by intentionally crossing the fence to enter the land. *See Hoery v. United States*, 64 P.3d 214, 217 (Colo. 2003) (defining trespass as "a physical intrusion upon the property of another

---

[4] The Loboguerreros maintain that the fence hewed to the property line and that Meridian Trust failed to prove otherwise.  Because we affirm the district court's ruling that the Loboguerreros adversely possessed all land within the fence, we need not address whether Meridian Trust proved that the fence encroached on its property.

without the proper permission from the person legally entitled to possession of that property"). We therefore affirm the district court's rulings on these claims as well.

## IV. Disposition

¶ 24 The judgment is affirmed.

JUDGE GROVE and JUDGE YUN concur.